### HALL *v.* HALL.

1. APPEAL AND ERROR—DIVORCE—EXTREME CRUELTY—SPECIFIC PER-
   FORMANCE—PRENUPTIAL AGREEMENT.

   In husband's suit for divorce from second wife on ground of
   extreme cruelty wherein wife sought specific performance of
   an alleged prenuptial agreement, evidence substantiated only
   acts of cruelty alleged by husband.

2. DIVORCE—APPEAL.

   In suit for divorce the trial court will not be reversed by the
   Supreme Court unless convinced that it must have reached a
   different conclusion had it occupied the position of the lower
   court under like circumstances.

3. SAME—LUMP-SUM SETTLEMENT—DURATION OF MARRIAGE.

   Lump-sum award of $4,000 and payment of $200 dental bill
   and $400 hotel bill for wife of plaintiff in suit for divorce
   is affirmed where, although plaintiff is a man of considerable
   means, the parties did not live together very long, she was his
   second wife and bore him no children, and did not help him
   to accumulate his present holdings.

4. SAME—COSTS.

   No costs are awarded plaintiff husband in suit for divorce on
   affirmance of trial court's decree upon wife's appeal.

Appeal from Gratiot; Cash (Paul R.), J. Sub-
mitted October 12, 1943. (Docket No. 49, Calendar
No. 42,493.) Decided December 29, 1943.

Bill by Wilber H. Hall against Mary D. Hall for
a divorce on ground of extreme and repeated
cruelty. Cross bill by defendant against plaintiff
to compel specific performance of an alleged ante-
nuptial agreement. Decree for plaintiff. Defendant
appeals. Affirmed.

*Edward R. Goggin* and *Alfred J. Fortino* (*O. G. Tuttle,* of counsel), for plaintiff.

*William C. O'Keefe* and *Robert J. Curry,* for defendant.

BUSHNELL, J. Plaintiff Wilber H. Hall, then 69 years old, whose first wife died in 1936, married defendant Mary D. Hall on January 1, 1938. The defendant was then about 44 years of age and had been divorced from her first husband in 1933.

Plaintiff is in the lumber, contracting and building business in Beaverton, Michigan, and St. Louis, Michigan. He lives in St. Louis, Michigan. The defendant has a house in Waquoit, Massachusetts, where she made her home, and it was charged that, except for a couple of months in the fall of 1938 and about a week in April or May of 1939, she "continuously, persistently and utterly refused to live with the plaintiff in his said home at St. Louis, Michigan." Various acts of claimed cruelty set up in the bill of complaint are substantiated by the record. The nature of this testimony is such that its recital is avoided in this opinion.

Plaintiff sought a divorce on the grounds of extreme cruelty, desertion, and abandonment. Defendant filed an answer and cross bill in which she sought specific performance of an alleged prenuptial settlement, which is neither substantiated by the evidence nor argued on appeal.

Testimony was introduced by the defendant tending to show that plaintiff was possessed of real and personal property valued at about $115,000. Prior to his marriage, he had conveyed certain real property to his adult children and had large sums of money on deposit. It is conceded by plaintiff that he is worth $35,787, exclusive of his interest in the two lumber companies. Defendant contends

that plaintiff's portion of the assets of these companies total about $67,000.

The parties became separated about 21 months after their marriage, and it appears from the testimony that during their married life plaintiff provided the defendant with various sums totalling about $7,000.

We have carefully examined the testimony and see no reason to disagree with the statement of the trial judge that:

"The court is not impressed with the seriousness of the defendant in trying to make the marriage relationship a success. She at times refused to live with the plaintiff at his home in St. Louis, Michigan; and we do not think that an arrangement, as testified to by the defendant, whereby the parties lived together a part of the time in their respective homes would be very conducive to a successful marital relationship. It occurs to us that the wife should live with her husband at his residence; and this the defendant has refused to do, amounting almost to statutory desertion. The defendant has also adopted a domineering, insinuating attitude toward the plaintiff, and on various occasions has been mean, irritable and insulting toward him. We believe this gives him (plaintiff) ample grounds for divorce.

"The defendant has not helped the plaintiff in any way to accumulate any of his property; and the court feels that, instead of helping him, she has had a grasping, mercenary attitude, in that her idea seemed to be mainly to get all the money and property she could from the plaintiff and give nothing in return. She has received from him over $7,000 in gifts or donations of various kinds during the short period of time that she has cohabited with the plaintiff."

As said in *Bly* v. *Bly,* 300 Mich. 681:

"We are mindful that the parties should come into equity with clean hands and, like the trial judge, we are not impressed by some of the testimony. However, we cannot say that we must have reached a different conclusion if we had had the opportunity to see and hear the witnesses."

We agree with the determination of the trial judge, in view of the circumstances, that an allowance to defendant of $4,000 is sufficient as a lumpsum settlement in lieu of dower and in full satisfaction of all claims that the wife may have in any property the husband owns or may hereafter own, or in which he may have any interest. Plaintiff, as ordered by the trial court, shall also pay defendant's dental bill of $200 and hotel bill of $400.

The decree of the trial court is affirmed, but without costs.

BOYLES, C. J., and CHANDLER, NORTH, STARR, WIEST, BUTZEL, and SHARPE, JJ., concurred.